UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| EQUAL EMPLOYMENT OPPORTUNITY | ) | |
|---|---|---|
| COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:08CV01439 AGF |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM AND ORDER

This employment discrimination case is before the Court on the motion of Defendant Wal-Mart Stores, Inc. ("Wal-Mart"), for summary judgment.[1] The Equal Employment Opportunity Commission ("EEOC") filed this action against Wal-Mart claiming that Wal-Mart discharged Yvonne Loskot from her position as certified optician because of her age (67 years old), in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 626(d) ("ADEA"). The EEOC seeks a permanent injunction enjoining Wal-Mart from unlawfully discharging its employees because of their age; an order instructing Wal-Mart to implement procedures to provide equal employment opportunities to individuals 40 years of age and older and to eradicate the effects of its unlawful employment practices; and back wages, liquidated damages, prejudgment

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

interest, and reinstatement or front pay. For the reasons set forth below, Wal-Mart's motion shall be denied.

## BACKGROUND

The record establishes that Wal-Mart discharged Loskot effective October 5, 2005. At the time, she had worked as an optician in Wal-Mart Vision Centers for ten years, and was stationed at the Wal-Mart store in De Soto, Missouri. John Turner had been the Vision Center District Manager for three years; Loskot's immediate supervisor was Pam Black, the manager of the De Soto Vision Center. In August 2005, Black became the subject of an internal investigation at Wal-Mart conducted by Jeff Bonora, a Wal-Mart "district loss prevention supervisor." Black was discharged later that month for allegedly mishandling funds from a company fundraiser she had managed.

According to Black's deposition testimony taken in the present case on July 9, 2007, Turner had told her on more than one occasion in May 2005 that to improve the profitability of the De Soto Vision Center, she should cut Loskot's hours, because Loskot was too old and would be retiring soon anyway, and if her hours were cut, she might get angry and retire earlier, and then Black could replace her with two younger employees. She testified that she understood that Turner did not want Loskot to be working at the store anymore; that Turner told her that Loskot made too much money, and that she was getting old, to which Black responded, "that wasn't very nice. We're all getting old." (Ex. B at 84-88, 160.)

Loskot testified by deposition that Black told her that Turner told Black to "get rid of" her because she was making too much money. (Ex. A 173-74.) Loskot's co-employee, Cindy Uhlinger, stated to an EEOC investigative interviewer on May 18, 2006, that Black told her (Uhlinger) in the summer of 2005, after Black had been terminated, that Turner had told Black to get rid of Loskot. Uhlinger was not sure whether Turner had reportedly told Black to do this due to Loskot's age or her salary. Turner testified by deposition that he did not make these statements to Black.

After Black's discharge, Turner essentially took over management of the De Soto Vision Center for approximately three weeks, until a new manager was hired. During this period, he reviewed records related to sales and customers' requests to "lay-away" certain eyeglasses, and found what he believed to be "red flags." Turner asked Bonora to investigate further. Both Turner and Bonora testified by deposition that they did not recall whether when Turner asked Bonora to investigate the matter, Turner mentioned any employee by name.[2] De Soto Vision Center employee Danielle Hyslop recalled seeing Turner and Bonora together, "looking at papers and printing receipts," almost daily during the two weeks after Black's termination. (Ex. I 43-45.)

---

[2] The EEOC points to its on-site investigative notes dated November 29, 2007, which state that Turner specifically mentioned Loskot to Bonora, as indicating that Turner asked Bonora to investigate Loskot. But this statement in the investigative notes appears to refer to Turner and Bonora discussing Loskot during the investigation, and not before. (Ex. S.).

3

Bonora found what he believed to be suspicious lay-away transactions involving Loskot, as well as what he believed to be improper use by members of her family members of "Project Insight," a Wal-Mart initiative for providing disadvantaged children with free eye exams and glasses. He called Loskot in for an interview on October 3, 2005, and asked her to explain these issues. Loskot told him that she had receipts for everything she had purchased and would bring them to the store the next day.

Viewing the facts in the light most favorable to the EEOC, the next day, Loskot saw her physician due to the stress of the interview and he gave her a note for a 30-day medical leave from work. On October 5, 2005, Loskot presented an envelope of receipts as well as the medical-leave note to her new immediate supervisor, who approved the leave. However, that same day Bonora recommended to the De Soto store manager that Loskot be terminated. Loskot was notified by letter from the store manager stating that her leave of absence had been denied due to "unresolved issues," and that due to her lack of cooperation with the investigation, he felt that the only action he could take was to terminate her effective October 5, 2005. (Ex. VV.)

The EEOC has submitted evidence which suggests that the majority of the apparent discrepancies Bonora had found involving Loskot had innocent legitimate explanations. Uhlinger stated in her May 2006 interview that she had been told by co-employees other than Loskot, that Black and Turner had given permission to store employees to participate in Project Insight.

# DISCUSSION

## **Summary Judgment Standard**

Rule 56(c)(2) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. Sallis v. Univ. of Minn., 408 F.3d 470, 475 (8th Cir. 2005). The moving party bears the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

When a motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that there is "a genuine issue for trial." Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment remains a valuable pretrial tool to determine whether or not any case, including an employment discrimination case, merits a trial. Berg v. Norand Corp., 169 F.3d 1140, 1144 (8th Cir. 1999).

**ADEA Claim**

The ADEA provides: "It shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff may establish [a] claim of intentional age discrimination through either direct evidence or indirect evidence." King v. United States, 553 F.3d 1156, 1160 (8th Cir. 2009). "Direct evidence" is evidence that shows "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Ramlet v. E.F. Johnson Co., 507 F.3d 1149, 1152 (8th Cir. 2007) (citations omitted).

In Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343 (2009), an ADEA case that originated in the Eighth Circuit on a mixed-motive theory, the Supreme Court held that the ADEA does not permit mixed-motive cases. Rather, "to establish a disparate-treatment claim under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Id. at 2350. The Supreme Court explained that the burden-shifting framework established in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), for mixed-motive cases under Title VII does not apply to ADEA claims. "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." Gross, 129 S.Ct. 2349.

6

The Supreme Court further instructed that there is no "heightened evidentiary requirement" for plaintiffs to satisfy their burden of persuasion through "direct evidence" as opposed to "circumstantial evidence." Id. at 2351 n.4. The rule is simply that "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Id. at 2351. The Court also observed that it has not "definitively decided" whether the evidentiary framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), used in Title VII cases is appropriate in the ADEA context. Gross, 129 S. Ct. at 2349 n.2.

Here, the record on the motion for summary judgment is fully developed and so the Court may turn to the question of whether the EEOC has presented sufficient evidence to raise a genuine issue for trial on the ultimate question of age discrimination. See Baker v. Silver Oak Senior Living Mang't Co., 581 F.3d 684, 688 (8th Cir. 2009).

The Court concludes that, although a close question is presented, the EEOC has presented a submissible case of age discrimination for determination by a jury. A factual dispute exists as to whether Turner told Black to "get rid of" Loskot due to Loskot's age. The reason the question of submissibility is close is because even if Turner made the statements in question, it is not clear that they evince a discriminatory motive. This is so because "employment decisions motivated by factors other than age (such as retirement eligibility, salary, or seniority), even when such factors correlate with age, do not constitute age discrimination." EEOC v. McDonnell Douglas Corp., 191 F.3d 948, 951 (8th Cir. 1999). The Court concludes that taking the evidence in the light most favorable

7

to the EEOC, Turner's repeated reference to Loskot's "old" age raises a jury question as to his age bias.

A close question is also presented on whether the evidence presents a jury question as to whether Turner, the only Wal-Mart agent with an alleged discriminatory motive, was involved in the decision to discharge Loskot. Upon review of the record, the Court concludes that there is evidence from which a jury could conclude that Turner asked Bonora to conduct the investigation so that misconduct on Loskot's part might be found which would lead to her termination. Further, as the EEOC argues, the conclusions that Bonora drew from his investigation, which later proved to be largely unreliable, lend support to the EEOC's theory that the stated reason for Loskot's termination was a pretext. Such facts could establish age discrimination under the "cat's paw" theory, pursuant to which "an employer cannot shield itself from liability for unlawful termination by using a purportedly independent person or committee as the decisionmaker where the decisionmaker merely serves as the conduit . . . by which another achieves his or her unlawful design." Richardson v. Sugg, 448 F.3d 1046, 1060 (8th Cir. 2006); see also Webb v. St. Louis Post-Dispatch, 51 F.3d 147, 149 (8th Cir.1995) ("[t]his circuit will not sterilize a seemingly objective decision to fire an employee when earlier discriminatory decisions have infected it.")

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **DENIED**. [Doc. #20]

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of March, 2010.